Please be seated. We'll now take 23-7008, Logsdon v. U.S. Marshal Service, Mr. Jason. May it please the Court, Kevin Jason for the appellate file number 31. The top block is here. With the Court's permission, I'd like to reserve three minutes for rebuttal. Thank you. The appellate officers in this case approached Mr. Logsdon from behind, ambushed him, and laid him unconscious. While he lay on the ground, they took turns beating him for two minutes. He was caught on videotape and was observed by two eyewitnesses. Mr. Logsdon did not flee, nor did he try to resist arrest. This is a case called for a state of court application of evidence. Counsel, I spot you and I struggle with the fact that these facts are so similar. It's analogous. It's Bivens-like. But you have a big mountain to climb after Egbert, in our case, and Silva. The Supreme Court says it's an extraordinary act to recognize a Bivens cause of action. Why should we do that here? Absolutely, Your Honor. Most importantly, this case is one that is not calling for an expansion of a remedy, nor a recognition of a new Bivens remedy. This is calling purely for an application of evidence. This is a 50-year-old precedent, one that's been undisturbed by the recent decisions. So we don't get past context under Abbasi? Actually, Your Honor, that's correct, yes. I think context will decide. That factor will decide this case. There's no need to go to special factors. And though we did brief on what we should consider, we would also, for the purposes of judicial economy, focus on context as well. Ask the court to decide on those grounds. You don't concede, though, that if we get to special factors, you lose? Actually, I do believe that this is one of those cases that would be the very slim exceptional case that would not have special factors counseling against expansion of the remedy. I could get into that if we do go down that road. But I do want to mention that in regards to new context, again, this is a prototypical Bivens case. That's what the lower court found initially. I was correct the first time around. And it's also the type of case that was anticipated by Abbasi when the Supreme Court articulated a standard for new context. Though it did mention about a list of ways in which future cases could exist outside of the Bivens trilogy, it also emphasized very clearly that there was not casting any doubt on the continued force of Bivens, nor the fact that it was necessary in a search-and-seizure context, much like this case here. It also emphasized that Bivens provided instruction to federal law enforcement officers, not specifying archivist officers, but law enforcement officers generally, and also said that it settled the law in the common and recurrent sphere of law enforcement. The factor that I am struggling with for the new context is the risk of disruptive intrusion by the judiciary into the functioning of other branches. So if we say these are the same rank, same constitutional claim, Fourth Amendment excessive force, Fourth Amendment gives us clear definition on the use of force, what kind of force is reasonable. Lincoln Band-Aid is probably the same. It's an arrest. But what about finding liability for these task force officers who are engaged in this sort of state, local enforcement with the executive? Why is that not a problem for you? Sure. I think the helpful way to think about new context is starting with the Bivens cases and the different policy balances that the Supreme Court decided in creating that implied remedy there. In Bivens, that was a case about narcotics officers, there we know that currently the DEA actually has federal, local task forces. The fact that it's not an intrusion in the Bivens context, i.e. in narcotics context, would extend itself to here, where even though the marshals do partner with local and state agents, the fact that it would not be a new context again if we were to do a narcotics officer would mean it's not a new context. Let me challenge that. Egbert reformulated what the test is. It boils it down to one issue. And then it said, we have explained that a new context arises when there are, quote, potential special factors that previous Bivens cases did not consider. And Bivens didn't consider the effect on task forces with other agencies. It also didn't consider alternative remedies, which Egbert says in itself is a reason to distinguish a case from Bivens. And there are some administrative remedies here. It's so rigid what it takes to get a Bivens action now. It's almost as if saying, if Mr. Bivens came here and filed a suit, we would take it. I'm very sympathetic to your view here. We have to follow precedent. Absolutely, Your Honor. I actually believe that precedent supports Mr. Loxley's position here. OK. So on a couple points, Tom. So in Egbert, that is a case that didn't reformulate the new context analysis. That question wasn't before the Supreme Court. It was only a question of whether or not the special factors would create a new remedy. In the government's argument before the Supreme Court, Chief Justice Roberts explicitly asked, is there a situation in which special factors would not preclude finding a remedy? And the government specifically said excessive force cases involving marshals. So I do think that in... I noted that, too. I thought that was interesting. But do you think their position has now changed because of Egbert? That was their position going in, but maybe not coming out. I don't believe Egbert was a case that could alter the new context setting because it wasn't a question before the court there. There's a multitude of cases that could come before the court. Most of them will not involve domestic law enforcement. It can involve Social Security. It can involve the civil service exam. But we're talking about the hard-line cases that Fossey set forth in which when you're creating new context, he said this is still a continued force of law that is a fixed principle, that it wasn't disturbing that. And in instances where they have found a new context regarding the Fourth Amendment, it has been with extraordinary additional fact of the border or national security, none of which is implicated here. And indeed, the facts that were articulated by the government, none of them are even approaching that at all. In Hernandez, Justice Alito was a new factor, a new context analysis. He first identified that he had a defendant is one of the questions to look at. But notably, it did not find that CBP was a new category. Rather, it looked at the circumstances of the incident. It said that it was a cross-border shooting that essentially involved two sovereign states. And then in talking about Bivens, it talked about it being an unreasonable search and seizure that happened in New York City. Justice Alito did not speak to the fact that it was CBP, that it was a different legal mandate. Rather, he was mostly focusing on the fact that it was a shooting that occurred at the border and the fact that it literally crossed the border. The court wouldn't be in a position to adjudicate a matter that could necessarily implicate two sovereign states. Well, we don't have that same concern here. But we do perhaps have a concern about finding liability for task force officers that might disincent folks from wanting to participate as part of the marshal services, state local relations. I mean, isn't there some sort of relationship between federal officials and local officials here that would be disrupted, even potentially? I mean, Egbert speaks of a potential disruption. That's where I'm really stuck. I think if you were to find, you know, again, I would say that if you were to find that sort of disruption here would effectively disrupt it for the DEA, which would effectively disrupt Bivens. And, you know, in Egbert, the court had the question of whether or not Bivens was overruled. It decided that it was not. It didn't take the question, and then it didn't specifically articulate that it was overruled. But to your question also in terms of, like, how this would impact the state, federal, and, you know, local relationship, you know, I also want to note that this is an argument that was raised for the first time on appeal. You know, it was – I don't think this is an argument that is alive as one that's waived. And specifically, we don't have any facts to it. I mean, this is a motion to dismiss that was granted only after it was reconsidered. There was no discovery. It's, you know, it's really impossible to say how that would actually impact the indemnity or whatever arguments were – other arguments were raised because we don't have them before us. Was the administrative remedy issue raised properly, do you think? Yes, they did raise administrative remedies. Our position is still that those weren't alternative remedies, not in the ways that have been recognized by this court or other courts in prior matters. The key distinction, especially when it comes to the OIG and the AG, is that the statutes merely gave discretion for these actors to investigate. There's no mandatory language to actually spark an investigation. In Egbert, there actually was an investigation that occurred, and in Silva, the BOP regulations are incredibly different. Those are also mandatory, and they require the BOP to actually determine whether or not there was a violation. Whereas here, you could file a complaint from a form you find online. There's no guarantee as if it would have been read, if there would be any determination of what would happen. Can I pause you there? You said in Egbert there actually was an investigation that occurred, but was that really important to the decision? Wasn't it just the availability of the investigation and the remedy? They didn't make that distinction, did they, and isn't that important here? I don't mean to overstate it. I'm merely saying that in Egbert, the question was whether or not there was a right to appeal, whether or not there was a right to appear. Those are questions that go far beyond what is being proposed by the government in this matter, where there's not even a basic level of procedure that's being offered. And to the FTCA, which is another alternative that's been posited, I'm just saying that the Supreme Court has been clear with Carlson and recently in Hernandez that it doesn't advocate Bivens. I know that they co-exist, and actually the explicit language of FTCA as well, I just recognize it's not exclusive remedy for cases like this. Do we look at remedy in looking at whether this is a new context? Or is that something that you only get to if you look at special factors? I think there are many instances where you can look to remedy. I think when you're looking at a prototypical garden variety case like this, that's not one of those. I do think Hernandez, that's an example of a case that is so extraordinary. In fact, the fact that it occurred across two different countries, that caused the court to maybe look at other factors when deciding the new context. But here, I don't think it calls for that. This is, again, just as a bossy says, there has to be some differences that were so trivial that Bivens didn't use. In Egbert, the court said, Congress has provided alternative remedies for brief parties in the plainest position that independently foreclose a Bivens action here. And how do you just... I'm understanding you and I may have missed something. You're distinguishing the administrative remedy in that case from here only because they actually did have an investigation. Not solely... Okay, what are some of the other things? I'm sorry, not solely because they had an investigation, but because they had procedural safeguards in place, such as the fact that there was a mandatory investigation process in which a complaint would be determined if the officer actually violated the Constitution or violated the rules. Here, there is no such thing. There's only a settlement authority and a discretionary authority to look into something. So the remedy... Oh, sorry. Let me just follow up. Yeah. So there's a difference between one's discretionary and one's mandatory. In Egbert, though, it said that the plaintiff had complained that this remedy was inadequate because he was not entitled to participate and had no right to judicial review of an adverse determination. So it's looking like a pretty weak administrative remedy in Egbert, and maybe this is just that little bit more... I think it's even bigger than that. I think this more resembles the remedy and scheme that was in Big Cats, where this court found that that wasn't an adequate remedy. I think that law is... I don't think that is in conflict with Egbert. And actually, in fact, recently the government filed this petition in Hicks, the Fourth Amendment case that we point to, in which they described Big Cats as good law on the Tenth Circuit. And I think in this particular case regarding alternative remedies, that is an area where it is also good law. In that case, there was also a statute that provided settlement authority, and the Circuit found that it was inadequate, ultimately. Now, my question was just to confirm, is it your position that the remedy has to provide for non-discretionary complete relief? I think it has to provide for settlement relief. I think the court's clear that it doesn't... Complete relief wouldn't be nice, but I do think that... But non-discretionary is... Yes, non-discretionary is a key point. And I see that I'm out of time, but I do want to just emphasize that the lower court did err in dismissing this action, and that this matter should be reversed and amended for the proceedings. Thank you. Thank you, counsel. Thank you. I'm not going to try to pronounce your name. Sometimes we get a... Maybe I did get a phonetic pronunciation, but I don't see it. My grandmother made it up after World War II, so nobody can pronounce it. May it please the court. I'm Dana Kerslan for the defendants Jerry Smith, Cody Vaughn, and Philip Gilliam. The district court correctly concluded that this case arises in a new context and that there are special factors here across an investigation. What is the new context? There's a new category of defendants and a different legal mandate, and both of those, the Supreme Court has told us, are relevant. So the new category of defendants, of course, is the marshal service, which operates under these joint task forces and needs cooperation for state, local, and tribal officers to bring together to arrest these fugitives, and it really depends on the legal context. It matters there that state officers typically carrying out state things have identification as a right, but federal officers, federal task force officers, including state officers that are part of that don't have that. Is that the only argument you made on appeal, the indemnification, or your friend was saying that there was not a whole lot before the district court about why the task force component of this was distinguishable? So, Your Honor, I think we did argue below the fact that it was the marshal service was a new context. We didn't go into the details of the way these task forces work, but the Supreme Court in Egbert said, there's a waiver argument there, and the Supreme Court said that because recognizing a movement's action is an extraordinary act that places great stress on the separation of powers, the court has a concomitant responsibility to evaluate any grounds. That's the footnote, right? Footnote three, yeah. I'm not surprised that that is a point of emphasis for the government, but we have a responsibility not just to worry about expanding Bivens, but also not to shrink it, right? And would you agree with that? This court needs to follow what the Supreme Court has said. Well, the Supreme Court has, I think, thought about it that way. I mean, Bivens is alive and well, though there are now parameters on how we think about it, right? I mean, so when you were looking at this case, what is the primary point that you would like us to identify or isolate for the new context principle, just that the caption says marshals? No, Your Honor, and I think it's important to look at all of the things together here. So we have the marshal service with the state federal task force with the need for cooperation, which is the kind of thing where the political branches have more force. Why is that meaningful on its own? Because it needs to be a meaningful difference, doesn't it? It can't just be a difference. It needs to be meaningful. There's clearly a difference here. There's a distinction. There's a different agency. The agency doesn't exist that was in Bivens anymore. We're always going to have that. It can't just be a different agency. It can't be. It's got to be something more material than that. It's got to be meaningful. So what is meaningful? Meaningfully different. Why does the task force make it meaningfully different when it's still law enforcement officers arresting an individual? So what the Supreme Court told us in Egbert is that a category of defendant is a meaningful difference. There's also the different legal context, right, the fact that this was a warrant outside the home as opposed to a warrantless entry into a home. That's also a different legal context. But the warrant doesn't really matter for the nature of the claim, does it? This is excessive force. So Egbert was also excessive force, right? The context matters in figuring that out, right? And one of the few cases after Egbert that has allowed a claim to continue, that's the Fourth Circuit case of Hicks, that warrant is exactly a different context. So while the Fourth Circuit won't let a claim go forward with a warrant, they said, you know, the Supreme Court has left Bivens for what they called warrantless searches and seizures. So the Fourth Circuit has found that warrant to be a relevant factor. If the government prevails in this case, is the holding in this case no Bivens against the US Marshals or no Bivens against US Marshals Task Force officers? So it's, of course, for the court to give the holding. I think the whole context here is important, right? The fact that it's both a different defendant and a... Well, I guess that's what I'm trying to understand is how are we to understand the nature of the defendant here, given that it is a task force? So is the holding in this case limited to the nature of the defendant before the court, or is the government saying it's against the agency? Well, the suit is against individuals. Here we have both task force officers and federal officers. When we put together a task force, differences in liability matter in terms of people's willingness to participate in the task force, and that kind of inhibition on people doing the government's work is one of the things the Supreme Court has told us in Edward, but long before, is relevant. And it's important here, in particular, because the Marshals Service work is catching the most dangerous violent fugitives in the United States. So the ability to put together those task forces is very important. But the other thing that is important that's a different legal context when we talk about the Marshals Service is that the Marshals Service, unlike the FBI, the DEA, they're not doing their own investigations here. They are executing warrants that were subject to judicial process in advance, often state warrants. So that's another difference in the legal context that is for the Marshals Service when it's carrying out. Can I ask you kind of an unfair question? Your specialty. Yes, my specialty. Why is it that the government's position at oral argument in Egbert was in response to a question from the court about what would the government say would be appropriate, Bivens' actions given all the constraints from Abbasi, that an action against the Marshals Service was an example? Why was that the position of the United States then and clearly is not now? So I can't speak to... Of course, that's why it's an unfair question. ...what happened at argument, but I can tell you that under Egbert and Abbasi, we have to look at these in the particular context, and the particular context here matters. It's not just that it's the Marshals Service. It's that there's the joint task force with the delicate issues that go to putting together those forces. I guess what I was sort of thinking about is, I'll ask it differently, in what way do you think Egbert so significantly changed pre-Egbert land that it would result in a change in the government's position? And I'm not holding you responsible for knowing what happened at oral argument there. But what is it about Egbert that so defines or redefines the parameters? So I don't think Egbert redefines the parameters. Egbert does make clear that a different category of defendant makes it a new context, and here we do have a different category of defendant, and there are specific things about the Marshals Service and the way it operates in these joint task forces that are the kinds of things that the court has told us aren't really relevant in determining whether there should be a Bivens remedy, the real reason to defer to the political branches. And this is a situation in which the executive and Congress have determined the level of deterrence, the remedial schemes and the level of deterrence that they think is necessary to create the appropriate level of deterrence, and Egbert has told us that the court shouldn't second-guess that determination by the executive. But what about the fact that we don't have any of the sort of really predominant concerns that were present in Abbasi and Egbert, like we're not at the border, we don't have a national security issue. How are we to think about that in deciding this case? Well, I think you should think about it the way the Sixth Circuit did in deciding Cain, which was also a Marshals Service case involving the execution of a warrant. Was that an unpublished decision? I don't see that that decision was published. You don't see that it was published? I don't see any sign that it was published, reading the decision. But the warrant, we know, is a different source of authority, just like the Sixth Circuit said in Cain, and the Marshals Service is a different category of defendant. Did they talk in that Cain case about why that was a meaningful distinction? It's a distinction, but it needs to be meaningful again. Yes, Your Honor, and it is meaningful. The Sixth Circuit, I don't remember everything the Sixth Circuit said, but they talked about the Marshals Service during task forces being meaningful because of the need to put together these teams that require cooperation between state, local, and tribal officers. And also, they talked about the fact that there was a warrant. So I don't remember exactly what they said about the warrant, but when there is a warrant, you're operating pursuant to judicial process. The court has found probable cause. But the standards we apply as far as the objective standard we apply to excessive force claims is the same. Isn't that really what this is all about? How does it change the standard we apply when we're doing an excessive force claim? Well, Your Honor, Edward was also an excessive force claim, so we know that the fact that it's an excessive force claim isn't what's determinative. We know that we're looking at the entire context. Well, you're trying to suggest that a warrant might make a difference  and I don't see any support for that, from the Supreme Court at least. A meaningful difference. Again, you can't just talk about differences. You've got to tell us how they're meaningful. Sure, Your Honor, but the Fourth Circuit, the Ninth Circuit, the Sixth Circuit, they've all looked at cases with law enforcement operating pursuant to a warrant and found new context. But I do think there are some cases out there where they've simply said there's a distinction and they haven't explained how it's meaningful. The presence of a warrant as a matter of law isn't going to get you a meaningful distinction. It doesn't make sense for that to be the rule. It has to matter in the context of the specific case. Your Honor, I do think the presence of a warrant makes sense as a distinction and I can talk more about that, but I'm not just relying on the warrant here. We also have the martial service. We have the alternative remedial schemes, right? Go ahead and address the warrant, why that's meaningful. Okay. So, when you're acting pursuant to a warrant, that changes the legal scheme somewhat in that the use of force standard is context-specific and some force is allowed in executing a warrant. It also, there has been a judicial process both before and probably there will be after once you're in the context of a warrant. We have a difference in terms of the martial services and investigating crimes, right? It's executing warrants that were given by others. So, that is another difference in the context. We also have the fact this warrant was outside of the home, right? If you look at Bivens, that's all about the special place of the home in the Fourth Amendment and the fact that the state laws on trespass wouldn't protect the home in the same way that the Fourth Amendment protects the home, right? So, this, when we have it executed, it's not just that it's a warrant, it's that it's outside the home, not to mention all these task force issues. Bivens spent very little time on the excessive force issue. It was mainly about entry into the home. Is that right, or am I misremembering? And that's right, Your Honor. Yes, Bivens was really focused on the state and legal, the fact that state law didn't provide the same kind of remedy for that entrance into the home that the Fourth Amendment would provide. And so, here, I think we do have a new context, and once we have a new context, of course, we have multiple special factors counseling hesitation here, including the remedies, including the concerns related to the marshal service and these joint task forces. What do you say to the appellant's argument that the remedy here is inadequate, the alternative remedy that we're supposed to be considering as a factor to counsel hesitation? Certainly, Your Honor. So, what the Supreme Court said about this in Egbert was that so long as Congress or the executive has a remedial process that it finds sufficient to secure an adequate level of deterrence, not the question of whether there's sufficient compensation, it's whether there's sufficient deterrence. So, if Congress and the executive have a remedial process that it finds sufficient to secure an adequate level of deterrence, courts can't second-guess that calibration. So, the fact that this remedial scheme is not obligatory, it's the same scheme that Sixth Circuit relied on in Kane, multiple courts have relied on the discretionary remedy in 31 U.S.C. 3724, I think the 9th, 11th, and the 7th maybe also relied on that, forgetting the third one. If there are no further questions, I support to affirm. Thank you, counsel. Well, you're not entitled to it. I'll give you 20 seconds. And just very quickly, in Bivens, that was a case in which they were trying to close the gap between federal liability and state liability for law enforcement. The fact that there are task force here, I think, in Bivens, just ratified a point that you can't have a state officer who is not liable just because they're not acting under federal authority, and they will be ineligible from suit. And I just think the last other point is the Fourth Circuit in Hicks and Seventh Circuit in Snowden have made very clear at a warrant that a task force is one in which there is still a garden variety that is an issue and one in which a parent's remedy still remains. Thank you. Thank you. Case is submitted. Counselor excused.